# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                      No. CR 11-2470 JB

WILLIAM ATKINSON,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) The United States of America's Sentencing Memorandum, filed June 12, 2012 (Doc. 28)("USA Sentencing Memorandum"); and (ii) the Defendant's Sentencing Memorandum, filed June 14, 2012 (Doc. 29)("Atkinson Sentencing Memorandum"). The Court held a sentencing hearing on August 13, 2012. The primary issues are: (i) whether U.S.S.G. § 3B1.2 applies to Defendant William Atkinson's case where the only other person involved in the criminal offense for which he was convicted was a confidential government source; and (ii) whether the Court will accept the parties' stipulation to a 3-level downward adjustment pursuant to U.S.S.G. § 3B1.2 because Atkinson has proved by a preponderance of the evidence that his role in the criminal activity for which he was convicted fell in between that of a minimal participant and a minor participant. The Court will grant the parties' request in their memoranda and accept the stipulation for a 3-level downward role adjustment under U.S.S.G. § 3B1.2. Although the confidential source to whom Atkinson sold the drugs is not a participant as defined in U.S.S.G. § 3B1.2, because Atkinson had to leave to get the drugs while the confidential source was purchasing them, Atkinson has proved by a preponderance of the evidence that there were other criminally responsible persons in the criminal activity for which he was convicted, and

U.S.S.G. § 3B1.2 therefore applies.  The Court will accept the parties' stipulation to a 3-level downward role adjustment based on Atkinson's limited role in the drug-trafficking scheme, evinced by Atkinson's supplier not permitting him to keep drugs in his house, the evidence that Atkinson has never before sold drugs, and the relatively small amount of drugs Atkinson distributed.

## PROCEDURAL BACKGROUND

Atkinson pled guilty to the Indictment, filed Sept. 20, 2011 (Doc. 2), charging him with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), that being Distribution of a Mixture and Substance Containing a Detectable Amount of Methamphetamine; and 18 U.S.C. § 2, that being Aiding and Abetting.  See Plea Agreement, filed Dec. 13, 2011 (Doc. 25).  The Plea Agreement included a stipulation that, pursuant to U.S.S.G. § 3B1.2, Atkinson was a minor/minimal participant in the criminal activity underlying the Plea Agreement and is thus entitled to a 3-level reduction from the base offense level calculated under the sentencing guidelines.  See Plea Agreement ¶ 9(c), at 4-5.

The United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") for Atkinson on March 9, 2012.  In the PSR, the USPO calculates Atkinson's total offense level to be 13.  See PSR ¶ 23, at 7.  The PSR calculates a base offense level of 18 under U.S.S.G. § 2D1.1(b)(1), because Atkinson pleaded guilty to possession of 1.2 net grams of actual methamphetamine.  See PSR ¶ 15, at 9.  The PSR includes a 3-level reduction pursuant to the stipulation in the Plea Agreement that Atkinson was in between a minor and a minimal participant in the criminal activity.  See PSR ¶ 19, at 7.  The PSR includes a 2-level reduction based on Atkinson's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1.  See PSR ¶ 29, at 10.  The PSR lists his criminal history category as III, based on 6 criminal history points.  See PSR ¶ 36, at 12.  The PSR calculates that an offense level of 13 and a criminal history category of III results in

a guidelines imprisonment range of 18 to 24 months.  See PSR ¶ 56, at 15.

On June 12, 2012, the United States filed its USA Sentencing Memorandum asking the Court to accept the stipulation that Atkinson should receive a minor/minimal role deduction pursuant to U.S.S.G. § 3B1.2.  See USA Sentencing Memorandum at 1.  The United States asserts: "A defendant may be eligible for a role reduction even if he is the only defendant convicted of the offense, if the offense involved other participants in addition to the defendant."  USA Sentencing Memorandum at 2 (citing U.S.S.G. § 3B1.2 cmt. n.2).  The United States contends that Atkinson's status as a "very small cog in the much larger drug distribution network" is evinced by the fact that his supplier did not let Atkinson have any methamphetamine for sale in his house, requiring Atkinson to only act as a courier when the confidential informant attempted to purchase drugs from Atkinson.  USA Sentencing Memorandum at 3.  The United States asserts that Atkinson "performed the limited function of serving as a 'go-between' for the sale of a user amount of methamphetamine . . . . mak[ing] him 'substantially less culpable than the average participant' in the drug trafficking organization."  USA Sentencing Memorandum at 3 (quoting U.S.S.G. § 3B1.2 cmt. n.3(A)).

On June 24, 2012, Atkinson filed his Atkinson Sentencing Memorandum asking the Court to "accept the executed plea agreement with the stipulated downward departures and impose the shortest sentence within the applicable federal sentencing range."  Atkinson Sentencing Memorandum at 1.  Atkinson asserts that his minor/minimal role in the activity is further evidenced by the Chaves County Metro Narcotics Task Force's execution of a search warrant on his home that failed to discover any drugs.  See Atkinson Sentencing Memorandum at 2 (citing PSR ¶ 10, at 5).  Atkinson contends that he was "the go-between . . . rather than being the seller of the methamphetamine." Atkinson Sentencing Memorandum at 2.  While Atkinson concedes that he "has broken the law in the past," he asserts that "this is not unusual given his life experience."  Atkinson

Sentencing Memorandum at 3.  Atkinson argues: "Given [his] very minor role in a transaction involving a very small amount of drugs and especially given the fact that he did not instigate this transaction, the minimum sentence [of 18 months] would be appropriate."  Atkinson Sentencing Memorandum at 5.

At the August 13, 2012, sentencing hearing, the Court asked the USPO whether it agreed with the parties' stipulation that the Court should grant Atkinson a 3-level downward departure under U.S.S.G. § 3B1.2, because Atkinson was a minor/minimal participant in the criminal activity. See Transcript of Hearing at 2:17-21 (Court)(taken Aug. 13, 2012)("Tr.").[1]  The USPO stated that it did not object to the parties' stipulation and agreed to the 3-level downward departure based on Atkinson's role in the criminal activity.  See Tr. at 2:22-23 (Probation Officer).  The Court asked whether the United States had any further information on how many individuals may be involved in the drug-trafficking operation of which Atkinson was a part in the transaction with the confidential informant.  See Tr. at 3:13-15 (Court).  The United States responded that, because Atkinson left his house to get the drugs that he sold to the confidential informant, the United States knew that there was at least one more person involved who was higher up in the drug-trafficking organization.  See Tr. at 3:16-22 (Abernathy).  Atkinson also confirmed that there was at least one other person involved in the drug trafficking organization.  See Tr. at 4:10-16.  The Court noted that, in assessing whether a person was a minor participant in the criminal activity, the Court must compare the defendant's culpability with the average participant in the criminal activity, and asked, because Atkinson was the only criminal defendant in this case, who the average participant would be in this criminal activity.  See Tr. at 4:17-25 (Court).  The United States asserted that Atkinson's

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcripts may contain slightly different page and/or line numbers.

case was one of many very similar cases that the United States took from Roswell, New Mexico, after they performed a large mobile sting, and the similarity of the cases led the United States to conclude that, while the United States did not know who the higher-level distributer is or, if multiple, who they are, but that Atkinson was one of many very low-level "street-level" dealers. Tr. at 5:7-6:3 (Abernathy).  The Court responded whether, if the United States' assertion that Atkinson was one of many similar street-level dealers is true, he would be exactly the level of culpability of the average defendant involved in this criminal activity. See Tr. at 6:16-19 (Court). Atkinson clarified that the other dealers that were picked up during the same sting were arrested selling greater amounts of drugs, and with substantially more drugs on their person and in their vehicles.  See Tr. at 6:20-7:5 (Almanza).  The Court asked the United States whether, if Atkinson's supplier were caught and indicted in the same case, the supplier would have faced the same charges. See Tr. at 7:16-20 (Court).  The United States responded that the supplier would have received the same charges, but had it identified the supplier, both the supplier and Atkinson would have also faced charges of conspiracy.  See Tr. at 7:21-8:1 (Abernathy).

The Court asked both parties whether there were any other participants in the criminal activity, as U.S.S.G. § 3B1.2 requires.  See Tr. at 8:5-13 (Court).  The United States responded that, even though the supplier was not identified, indicted, or arrested, the supplier still qualifies as a participant in the criminal activity as that term is used in U.S.S.G. § 3B1.2 and U.S.S.G. § 3B1.1. See Tr. at 8:19-20 (Abernathy).   The Court asked the United States, if it was contending that Atkinson was somewhere between a minor and minimal participant in this criminal activity, and the supplier qualified as the only other criminal participant in the activity, how would there be, or who would be, a minor or minimal participant to qualify for a 2-level, or a 4-level downward departure. See Tr. at 12:6-17 (Court).  The United States contended that a minor participant in this criminal

activity would be a dealer that the supplier allowed to hold a small amount of drugs in their

residence to dispose of as that dealer saw fit.  See Tr. at 12:18-13:2 (Atkinson).  In response to the

Court's inquiry whether Atkinson agreed with the United States' analysis of what a minor versus

a minimal role may have been in this criminal activity, Atkinson responded that, while he did not

disagree, it would not be beyond his "bounds of logic or rationale to submit that Mr. Atkinson may

be a minimal participant; however, the government's stipulation, which was accepted and

appreciated, has [Atkinson] in between the minor and minimal participation."  Tr. at 13:10-24

(Almanza).  The Court asked the United States, given the very minor role that it is asserting

Atkinson had in this criminal activity, and its classification of Atkinson as between a minor/minimal

participant, how it would distinguish between a minimal and minor participant in this activity, and

a criminal defendant not entitled to any role adjustment at all.  See Tr. at 13:25-14:12 (Court).  The

United States replied that Atkinson's participation in this activity was very minor and possibly

minimal, and conceded that it could not "articulate somebody who would be entitled to a four-level

[deduction] based on the facts . . . . [and that] the facts could support a four-level adjustment.  [But]

[t]he parties stipulated to three."  Tr. at 14:13-19 (Abernathy).  Atkinson agreed that it would be

difficult to articulate a distinction between a participant who would be entitled to a 4-level deduction

and who would be entitled to 3 levels, but offered that, if a street-level dealer, who was not

permitted to keep drugs for sale in his home, sold the drugs and was paid solely in exchange for

drugs, rather than money, that dealer may be entitled to a 4-level minimal participant role

adjustment.  See Tr. at 14:21-15:12 (Almanza).

## LAW REGARDING MITIGATING ROLE ADJUSTMENTS

U.S.S.G. § 3B1.2 authorizes courts to reduce a defendant's offense level if the defendant was

a minimal or minor participant in an offense, or somewhere in between.  See U.S.S.G. § 3B1.2;

United States v. Aguilar, No. CR 04-0311 JB, 2005 WL 2313585, at *3 (D.N.M. Aug. 18, 2005)(Browning, J.).  U.S.S.G. § 3B1.2 provides in full:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a)    If the defendant was a minimal participant in any criminal activity, decrease by **4** levels.
>
> (b)    If the defendant was a minor participant in any criminal activity, decrease by **2** levels.
>
> In cases falling between (a) and (b), decrease by **3** levels.

U.S.S.G. § 3B1.2.  As a threshold requirement, therefore, a downward adjustment under U.S.S.G. § 3B1.2 requires that there was more than one participant in the criminal activity.  Application note 1 to U.S.S.G. § 3B1.2 provides that the word participant has the same "meaning given that term in Application Note 1 of § 3B1.1 (Aggravating Role)."  U.S.S.G. § 3B1.2 cmt. n. 1.  "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted.  A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant."  U.S.S.G. § 3B1.1 cmt. n.1.  Application note 3 indicates that this guideline "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A).  Application note 3 further confirms that a court's task in determining the application of this guideline in each case is highly fact-based: "The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the circumstances and involves a determination that is heavily dependent upon the facts of the particular case." U.S.S.G. § 3B1.2 cmt. n.3(C).

In addition to the circumstances of the particular case, the United States Court of Appeals

for the Tenth Circuit has noted that, in determining whether the defendant is less culpable than the average participant, courts should compare the defendant not only with other participants in the particular criminal activity, but also with an average offender in that type of offense:

> [T]he Guidelines permit courts not only to compare a defendant's conduct with that of others in the same enterprise, but also with the conduct of an average participant in that type of crime.  In other words, resort may be had to both internal and external measurements for culpability.  The fact that the Guidelines themselves take into account the magnitude of conduct by establishing different offense levels does not preclude the use of an external measure in applying a particular adjustment.  A major goal of the Guidelines, after all, is uniformity.

United States v. Caruth, 930 F.2d 811, 815 (10th Cir. 1991)(citing United States v. Andrus, 925 F.2d 335, 337 (9th Cir. 1991); United States v. Sanchez, 914 F.2d 206, 208 (10th Cir.1990))(internal citations omitted).  Thus, "a sentencing court may consider the underlying scheme, as opposed to merely the offense of conviction, in determining role in the offense adjustments."  United States v. Harfst, 168 F.3d 398, 403 (10th Cir. 1999)(quoting United States v. Saucedo, 950 F.2d 1508, 1513 (10th Cir. 1991), overruled in part on other grounds, Stinson v. United States, 508 U.S. 36 (1993)).  The Tenth Circuit has held that the inquiry whether a defendant is a minor or minimal participant must "focus upon the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense."  United States v. Salazar-Samaniega, 361 F.3d 1271, 1277 (10th Cir. 2004)(quoting United States v. Calderon-Porras, 911 F.2d 421, 423-24 (10th Cir. 1990)).  The burden is on the defendant to establish, by a preponderance of the evidence, the defendant's entitlement to an offense level reduction under U.S.S.G. § 3B1.2.  See United States v. Santistevan, 39 F.3d 250, 254 (10th Cir. 1994)("It is the defendant's burden to establish, by a preponderance of the evidence, his entitlement to an offense level reduction under § 3B1.2 ")(citing United States v. Telman, 28 F.3d 94, 97 (10th Cir. 1994)).

Subsection (a) regarding minimal participants covers "defendants who are plainly among the

least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n.4. Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant. See U.S.S.G. § 3B1.2 cmt. n.4. In an amendment to this guideline effective on November 1, 2011, the United States Sentencing Commission removed the following sentence from application note 4: "It is intended that the downward adjustment for a minimal participant be used infrequently." U.S. Sentencing Manual app. C, vol. III, at 406 (2011). As a reason for this change, the Sentencing Commission stated: "The Commission determined that [this sentence is] unnecessary and may have the unintended effect of discouraging courts from applying the mitigating role adjustment in otherwise appropriate circumstances." U.S. Sentencing Manual app. C, vol. III, at 406. Subsection (b) covers a defendant who "is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5.

The Court has, in the past, based its determination whether a downward adjustment is warranted, and if so, at what level, on the defendant's knowledge in the particular case of the criminal activity for which the defendant was arrested compared with that of an average participant. In United States v. Aguilar, based on the defendant's knowledge of the criminal activity for which she was convicted, the Court denied the defendant's request for a 4-level minimal role deduction, but concluded that the defendant was entitled to a 3-level deduction because she was between a minor and minimal participant. See 2005 WL 2313585, at **5-6. The defendant and her co-defendant were arrested for conspiracy to distribute marijuana after a United States Border Patrol agent pulled over the car that her co-defendant was driving in which she was a passenger, and found in excess of one hundred kilograms of marijuana. See 2005 WL 2313585, at **1-2. The Court noted that the defendant knew that her co-defendant, the driver of the car, "sold drugs and knew they

were traveling to New Mexico to pick up drugs . . . . and understood that she was traveling . . . to provide cover." 2005 WL 2313585, at *5. The Court concluded that "[b]ased on [the defendant]'s knowledge and understanding of the offense, the Court cannot conclude that she played a minimal role." 2005 WL 2313585, at *5. The Court, however, concluded that her role in the offense was "significantly less than [her co-Defendant's] role." 2005 WL 2313585, at *6. The Court determined that her role was somewhere between minor and minimal, granting a 3-level adjustment downward, because "[s]he was not involved in, or aware of, the planning of the offense, and she was not receiving payment for her participation. [The defendant] did little more than ride along with [her co-Defendant] knowing that he was picking up drugs." 2005 WL 2313585, at *6. In United States v. Aguirre-Garcia, No. CR 08-0823 JB, 2009 WL 5851092 (D.N.M. Dec. 15, 2009)(Browning, J.), the Court refused to grant the defendant -- a courier in the transaction -- his request for a downward role adjustment where the defendant's knowledge suggested the defendant was not any less culpable than the average participant. See 2009 WL 5851092, at *3. The Court noted that the defendant "knew that he was to be transporting drugs and placed the drugs into the vehicle in preparation for the trip in which he was apprehended." 2009 WL 5851092, at *3. The defendant had participated in one previous drug trafficking transaction, transporting drugs from Tucson, Arizona, to Ohio, for which he was paid, and knew he was transporting drugs when arrested on his second trip. See 2009 WL 5851092, at *1.

## ANALYSIS

There being no objection to the PSR's factual findings, the Court adopts them as its own. Although the offense involved Atkinson's sale of methamphetamine to a confidential source, who cannot be a participant in the criminal offense as that term is used in U.S.S.G. § 3B1.2, because Atkinson left his residence while the confidential source was there and returned with the drugs, the

Court concludes that there were multiple participants in the criminal activity and thus U.S.S.G. § 3B1.2 applies.  The Court will accept the Plea Agreement's stipulation that Atkinson's role in the criminal activity fell in between a minimal and a minor participant based on Atkinson's culpability relative to the other dealers alleged to have participated in the criminal activity taking place in Roswell, and his culpability relative to an average offender of the same type of criminal activity.  Accepting the stipulation to a 3-level downward role adjustment under U.S.S.G. § 3B1.2, brings Atkinson's total offense level to 13.  A total offense level of 13 and a criminal history category of III corresponds with a guideline imprisonment range at 18 to 24 months.  The Court concludes that a sentence of 18 months is appropriate in this case.

**I.       U.S.S.G. § 3B1.2 APPLIES TO ATKINSON'S CONVICTION FOR DISTRIBUTION OF A CONTROLLED SUBSTANCE, EVEN THOUGH THE ONLY PERSON WITH WHOM ATKINSON COMMITTED THE CRIME WAS A CONFIDENTIAL <u>GOVERNMENT SOURCE</u>.**

U.S.S.G. § 3B1.2 authorizes courts to reduce a defendant's offense level if the defendant was a minimal or minor participant in an offense, or somewhere in between.  <u>See</u> U.S.S.G. § 3B1.2; <u>United States v. Aguilar</u>, 2005 WL 2313585, at *3.  As a threshold requirement, therefore, a downward adjustment under U.S.S.G. § 3B1.2 requires that there was more than one participant in the criminal activity.  Application note 1 to U.S.S.G. § 3B1.2 provides that participant has the same definition as that used in U.S.S.G. § 3B1.1: "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted.  A person who is not criminally responsible for the commission of the offense (<u>e.g.</u>, an undercover law enforcement officer) is not a participant."  U.S.S.G. § 3B1.1 cmt. n.1.

The United States Court of Appeals for the Eighth Circuit concluded that arguments that "defendants convicted of 'sole participant' offenses may nonetheless be entitled to a 'minor

participant' reduction are sound in light of the present language of the Sentencing Guidelines and application notes thereto." United States v. Snoddy, 139 F.3d 1224, 1231 (8th Cir. 1998). The Eight Circuit provided the following reasoning for its conclusion:

> First, § 3B1.2 states that the reduction is to be made on the basis of the defendant's degree of participation "in any criminal activity," not merely in the offense of conviction. U.S.S.G. § 3B1.2. Indeed, this court has so held. See United States v. Lucht, 18 F.3d 541, 556 (8th Cir.) (the determination of a defendant's role in an offense is based on all relevant conduct, not solely on the act of conviction), cert. denied, 513 U.S. 949 . . . (1994). Furthermore, the application notes instruct that the degree of participation is to be measured in comparison to other participants in "concerted" or "group" activity, not merely those involved in a charged "conspiracy." U.S.S.G. § 3B1.2, application note 1. Yet, most persuasive of all, as the other appellate courts to consider the question have concluded, is the specific instruction in the introductory commentary to Part B that "[t]he determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 (Relevant Conduct), i.e., all conduct included under § 1B1.3 (a)(1)-(4), and not solely on the basis of the elements and acts cited in the count of conviction." U.S.S.G. § Ch. 3, Part B, introductory commentary. Furthermore, application notes to § 3B1.1 explain that a "participant" "is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1, application note 1.

139 F.3d at 1231. Accord United States v. Saucedo, 950 F.2d at 1513 (quoting the Introductory Commentary to Chapter 3, Part B, of the Guidelines Manual for the proposition that "the determination of a defendant's role in the offense is . . . not [to be made] solely on the basis of elements and acts in the court of the conviction"). Similarly, in United States v. Harfst, the Tenth Circuit, in analyzing an allegation of ineffective assistance of counsel at sentencing for a defendant convicted of possession with intent to distribute, concluded that the defense counsel's assistance may have been deficient because he failed to ask for a downward adjustment under U.S.S.G. § 3B1.2. See 168 F.3d at 404. The Tenth Circuit cited to the Eighth Circuit's opinion in United States v. Snoddy, and quoted the United States Court of Appeals for the Ninth Circuit's holding in United States v. Demers, 13 F.3d 1381 (9th Cir. 1994), in recognizing that U.S.S.G. § 3B1.2 applies to

offenses in which there is only one criminal defendant:

> By mandating a fact-based inquiry into the relative seriousness of the defendant's offense of conviction compared to his actual criminal conduct, the introductory commentary to Chapter 3, Part B expressly allows for a downward adjustment for a courier convicted of possession with intent to distribute, provided his role and culpability in the trafficking scheme are sufficiently minor compared to that of the other participants.

United States v. Harfst, 168 F.3d at 403-04 (internal alterations omitted).

In United States v. Speenburgh, 990 F.2d 72 (2d Cir. 1993), the United States Court of Appeals for the Second Circuit held that U.S.S.G. § 3B1.2 does not apply to a defendant when the only other person with whom the defendant committed the crime was a confidential informant. The government informant purchased one shotgun from the defendant that was hidden in the defendant's trailer and later purchased two additional shotguns that the defendant sawed off in the informant's presence. See 990 F.2d at 73. The Second Circuit concluded: "Because the only person with whom [the defendant] committed this offense was a Government agent, the adjustment is unavailable." 990 F.2d at 74. The Second Circuit rejected the defendant's argument that the government informant may be criminally responsible, and thus a participant, if he went so far as to entrap the defendant, stating: "We reject an interpretation of 'criminally responsible' that would place agents of the Government at risk of criminal prosecution if they were too aggressive in eliciting criminal activity. Thus, even if [the informant's] actions rose to the level of entrapment, he was not criminally responsible." 990 F.2d at 74.

The offenses for which Atkinson was convicted were distribution, and aiding and abetting distribution. The only person with whom Atkinson committed the offense -- the purchaser of the drugs -- was the government's confidential source, making Atkinson the only criminal defendant in the case. Although there is often only one criminal defendant in a criminal prosecution for

-13-

possession with intent to distribute, because the criminal activity rarely involves only one offender, U.S.S.G. § 3B1.2 nevertheless applies as the defendant convicted of intent to distribute will usually play a lesser role in the overall drug trafficking scheme. This reality leads to the conclusion that U.S.S.G. § 3B1.2 applies to this case in which Atkinson's arrest for distribution involved two offenders, only one of whom was criminally culpable. While this conclusion may not apply to every distribution charge -- as in some cases the defendant distributing the drugs may have also produced the drugs[2] -- it applies in this case where Atkinson did not have the drugs when the confidential source came to purchase them, but had to leave with the money the confidential source gave him and return with the drugs. Under the facts and circumstances of this case, although Atkinson was the only person arrested for the criminal conduct, he was not the only participant in the criminal activity for which he was arrested. The Court concludes, therefore, that U.S.S.G. § 3B1.2 applies to Atkinson's distribution offense, even though the only person with whom he committed the offense for which he was convicted was a confidential government source.

**II.     THE COURT FINDS THAT ATKINSON HAS PROVED BY A PREPONDERANCE OF THE EVIDENCE THAT, BASED ON THE RELEVANT CONDUCT, HE WAS SOMEWHERE IN BETWEEN A MINOR AND A MINIMAL PARTICIPANT IN THE CRIMINAL ACTIVITY, AND THE COURT WILL THUS ACCEPT THE PLEA AGREEMENT'S STIPULATION FOR A 3-LEVEL DOWNWARD ADJUSTMENT.**

Section 3B1.2 "provides a range of adjustments for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." U.S.S.G. § 3B1.2 cmt. n.3(A). Subsection (a) regarding minimal participants covers "defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G.

---

[2]The mitigating role adjustment also may not be applicable in other cases such as gun cases, where the gun is stolen, but it was the defendant who stole the gun. In such a crime, the criminal activity would not have been the "conduct of a group," U.S.S.G. § 3B1.2 cmt. n.4, and there would thus  not be any other participants in the criminal activity.

§ 3B1.2 cmt. n.4.  Subsection (b) covers a defendant who "is less culpable than most other participants, but whose role could not be described as minimal."  U.S.S.G. § 3B1.2 cmt. n.5.  "The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the circumstances and involves a determination that is heavily dependent upon the facts of the particular case."  U.S.S.G. § 3B1.2 cmt. n.3(C).  In addition to the circumstances of the particular case, "'a sentencing court may consider the underlying scheme, as opposed to merely the offense of conviction, in determining role in the offense adjustments' under Chapter 3, Part B of the sentencing guidelines."  United States v. Harfst, 168 F.3d at 403 (quoting United States v. Saucedo, 950 F.2d at 1513).  The Tenth Circuit has held that the inquiry whether a defendant is a minor or minimal participant must "focus upon the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense."  United States v. Salazar-Samaniega, 361 F.3d at 1277.  "When culpability must be weighed, evidence must exist of other participants and their role in the criminal activity."  United States v. Arrendodo-Santos, 911 F.2d 424, 426 (10th Cir. 1990).

Courts around the county, including the Tenth Circuit, have uniformly held that a defendant's alleged status of a courier does not automatically entitle a defendant to a downward adjustment under U.S.S.G. § 3B1.2.  See e.g., United States v. Harfst, 168 F.3d at 402-03 ("There is no per se rule in this circuit that couriers are minor or minimal participants.")(citing United States v. Ballard, 16 F.3d 1110, 1116 (10th Cir. 1994)); United States v. Santos-Garcia, 313 F.3d 1073, 1081 (8th Cir. 2002) ("'A role as a courier does not automatically entitle a defendant to a downward adjustment.'") (quoting United States v. Alverez, 235 F.3d 1086, 1090 (8th Cir. 2000)); Ajala v. United States Parol Comm'n, 997 F.2d 651, 656 (9th Cir. 1993)("[T]he mere fact that a defendant acted as a drug carrier does not mean that [the defendant's] role was minimal or minor.")(citing

United States v. Lui, 941 F.2d 844, 849 (9th Cir. 1991)).  In the Tenth Circuit specifically, courts have been reluctant to grant a downward adjustment based solely upon the defendant's status as a courier.  See United States v. Arrendondo-Santos, 911 F.2d at 426 (holding that the district court did not err in refusing downward adjustment under U.S.S.G. § 3.B1.2 for a defendant who was a courier)("When a crime is committed by two or more persons, one will almost always have a different level of participation. . . . The services or contribution of each may be indispensable to the completion of the crime.").  As the Tenth Circuit has noted, couriers are essential participants in a drug-trafficking organization:

> A drug-smuggling operation has many participants; some may purchase, some may transport, some may distribute, and some may sell. All are indispensable to the operation. It would be unproductive to debate which function is the more culpable. . . . The mere fact that a defendant is a courier in a drug-smuggling operation does not entitle that defendant to be classified as a minimal participant.

United States v. Calderon-Porras, 911 F.2d 421, 423 (10th Cir. 1990).  See United States v. Arrendondo-Santos, 911 F.2d at 426 ("Couriers are indispensable to any drug-dealing network."). In determining whether the facts of the particular case counsel for granting a downward adjustment for a defendant whose participation in the criminal activity amounted to a courier, courts should look toward whether the defendant has a greater or a lesser amount of knowledge than the average courier.  See United States v. Ludwig, 641 F.3d 1243, 1255 (10th Cir. 2011)(upholding the denial of a downward adjustment under U.S.S.G. § 3B1.2 and concluding: "[W]e are offered no reason or precedent suggesting that the court's factual assessments -- about the knowledge possessed by 'average' couriers and [the defendant] -- clearly erroneous").

The majority of cases within the Tenth Circuit where courts have refused to grant any downward role adjustment for couriers in drug cases are cases in which the defendant's statements are the sole proof that the defendant had only a minor or minimal role in the criminal activity.  See

e.g., United States v. Eckhart, 569 F.3d 1263, 1276-77 (10th Cir. 2009)(holding that the district

court's refusal to grant both defendants' requests for downward adjustments under U.S.S.G. § 3B1.2

because of their role as couriers, reasoning that "[t]here is no evidence to support that, apart from

their self-serving statements, which the district court could well have found not credible").  In

United States v. Michael, 411 F. App'x 167, 175 (10th Cir. 2011)(unpublished)[3], for instance, the

Tenth Circuit noted that, in denying the defendant's request for a downward adjustment under

U.S.S.G. § 3B2.1, the district court stated that "it had insufficient information to indicate one way

or another what [the defendant]'s role was, including whether he was directing or acting at the

direction of others."  411 F. App'x at 167.  The Tenth Circuit noted that "[t]he sole evidence before

the district court was [the defendant]'s own testimony that he was only a courier, which the district

court can discredit."  411 F. App'x at 167.  Courts have also been unwilling to grant a downward

role adjustment where there is evidence that the alleged courier defendant has participated in more

than one transaction, and/or where the defendant was transporting a large quantity of drugs.  See

United States v. Sayad, 589 F.3d 1110, 1114 (10th Cir. 2009)(upholding the district court's denial

of the defendant's downward adjustment request for an allegedly minor role "as a mule," noting that

"there was no evidence corroborating [the] assertion that [the defendant's] sole involvement was as

a mule. . . . [and] the large quantity of drugs . . . cast some degree of doubt on the assertion he was

---

[3]United States v Michael is an unpublished opinion, but the Court can rely on an unpublished
opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R.
32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their
persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding
precedent, . . . and . . . citation to unpublished opinions is not favored . . . .  However, if an
unpublished opinion . . . has persuasive value with respect to a material issue in a case and would
assist the court in its disposition, we allow a citation to that decision."  United States v. Austin, 426
F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that United States v. Michael has persuasive
value with respect to a material issue, and will assist the Court in its disposition of this sentencing
memorandum opinion and order.

just a one-time courier").  In <u>United States v. Rivera-Carrera</u>, 386 F. App'x 812 (10th Cir. 2010) (unpublished), the Tenth Circuit upheld the district court's refusal to grant the defendant's downward-adjustment request for an allegedly minor role, because "[t]rial evidence showed that [the defendant] transported large quantities of methamphetamine[] on more than one occasion."  386 F. App'x at 819.  Similarly, in <u>United States v. Garcia-Cardenas</u>, 242 F. App'x 579 (10th Cir. 2009)(unpublished), the Tenth Circuit held that denial of the courier-defendant's request for a downward role adjustment was not improper where the "Defendant's involvement in the ongoing methamphetamine distribution ring prior to his arrest was significant."  242 F. App'x at 582.  The Tenth Circuit noted that telephone records and motel records showed that the defendant transported methamphetamine on multiple occasions before his arrest in the case for which he was being sentenced.  <u>See</u> 242 F. App'x at 582.

The Court has, in the past, accepted plea agreements that contain stipulations to downward adjustments pursuant to § 3B1.2 for defendants who were couriers in the criminal activity for which they were convicted where the stipulation was to a 2-level downward departure for the defendants' minor role in the criminal activity.  <u>See e.g.</u>, <u>United States v. Lewellen</u>, No. CR 11-1524 JB, 2012 WL 2175769, *4 (D.N.M. June 5, 2012)(Browning, J.)(accepting parties' stipulation and granting 2-level downward adjustment for the defendant's minor role in the criminal activity under U.S.S.G. § 3B1.2, noting that "[t]he United States asserted that it had no reason to believe that [the defendant] played a larger role than being a courier"); <u>United States v. Hall</u>, No. CR 11-0067 JB, 2012 WL 592870, *1 (D.N.M. Feb. 21, 2012)(Browning, J.)(granting a 2-level downward adjustment under U.S.S.G. § 3B1.2, based on the parties' stipulation that role was as a minor participant as "it appear[ed] that the defendant was acting as a courier . . ."); <u>United States v. Colaiezzi</u>, No. CR 09-0592 JB, 2010 WL 5477154, *2 (D.N.M. Dec. 16, 2010)(Browning, J.)("The Court will accept

the stipulation that [the defendant] was a minor participant, because it appears from the information available to the Court that she was not more than a courier."). The Court has also, however, refused to grant courier-defendants' requests to adjust downward for a role adjustment where the Court finds that the defendants' knowledge of the criminal activity counseled against granting the requests. See United States v. Aguilar, 2005 WL 2313585, at *6 (denying the defendant's request for a 4-level minimal role deduction as the defendant knew that she was transporting drugs, but concluding that, because she "did little more than ride along with [her co-Defendant] knowing that he was picking up drugs," she was entitled to a 3-level deduction because she was between a minor and minimal participant). In United States v. Aguirre-Garcia, the Court refused to grant the courier-defendant's downward role adjustment where the defendant's knowledge suggested the defendant was not less culpable than the average participant. See 2009 WL 5851092, at *3. The Court noted that the defendant "knew that he was to be transporting drugs and placed the drugs into the vehicle in preparation for the trip in which he was apprehended." 2009 WL 5851092, at *3. The defendant had participated in one previous drug trafficking transaction, transporting drugs from Tucson, Arizona, to Ohio, for which he was paid, and knew he was transporting drugs when arrested on his second trip. See 2009 WL 5851092, at *1.

The Indictment in this case names Atkinson as the only criminally responsible person in this criminal offense. Thus, throughout this federal case, Atkinson had no other co-Defendants, and the Court was provided with no information regarding other dealers, suppliers, purchasers, or couriers who were arrested for being involved in the same drug-trafficking scheme as that for which Atkinson was arrested. Moreover, while both parties' sentencing memoranda ask that the Court accept the parties' stipulation to Atkinson's minor/minimal role in this criminal activity, because Atkinson was a "go-between," USA Sentencing Memorandum at 3; Atkinson Sentencing

Memorandum at 2, neither memoranda provide any information regarding who, other than the confidential informant, Atkinson was going between.  Although the Court must heavily rely on the United States' representations in finding as fact that a defendant played a minor or minimal role in the criminal activity, the Court does not believe it is appropriate to rely wholly upon the United States' representations -- the defendant's opposing party -- without some presentation of evidence of what the criminal activity was, and who the other participants are with whom the Court, and the United States in stipulating to a downward role adjustment, are required to compare the defendant's culpability.  While U.S.S.G. § 3B1.2 applies to cases such as this one where there may be a sole criminally responsible defendant, to apply U.S.S.G. § 3B1.2, there must be "more than one participant [-- criminally responsible person --] [] involved in the offense."  U.S.S.G. § 3B1.2 cmt. n.2 (emphasis added).  While the United States clarified at the hearing that Atkinson was one of many "street-level" dealers arrested in the sting in Roswell, Tr. at 5:7-6:3 (Abernathy), the United States failed to make clear in its USA Sentencing Memorandum and in the Plea Agreement that all those arrested were part of the same drug-trafficking scheme, or "the offense."  U.S.S.G. § 3B1.2 cmt. n.2.  The Court may be able to accept that there are multiple people involved in almost every drug transaction, and that a street-level dealer, or courier, may be only a "small cog in an elaborate multiparty scheme to distribute drugs," United States v. Harfst, 168 F.3d at 398, but the Court cannot soundly accept the conclusion that the street-level dealer is thus automatically a minor participant in that elaborate scheme -- let alone is somewhere between a minor and minimal participant.  The Court also cannot say from the fact that the defendant is a courier that it follows logically that the defendant is automatically a small cog in the elaborate criminal scheme without some evidence of that elaborate scheme and wherein the scheme the small cog fits.  See Ajala v. United States Parol Comm'n, 997 F.2d at 656 ("[T]he mere fact that a defendant acted as a drug

carrier does not mean that [the defendant's] role was minimal or minor."). Although it is within the Court's power to determine whether a downward adjustment under U.S.S.G. § 3B1.2 is warranted and, if so, at what level, the Court's power is limited by the United States Sentencing Commission's explicit parameters on how the Court must make that determination. See U.S.S.G. § 3B1.2 cmt. n.4 (directing that a 4-level downward adjustment for a minimal role "applies to a defendant . . . who plays a minimal role in concerted activity . . . . who are plainly the least culpable . . ."); id. cmt. n.5 (directing that a 2-level downward adjustment for a minor role "applies to a defendant . . . who is less culpable than most other participants, but whose role could not be described as minimal"); id. ("In cases falling between [a minimal role] and [a minor role], decrease by **3** levels). Thus, in exercising its discretion to enter into a plea agreement, if the parties intend to ask the Court to accept the plea agreement, the United States would be wise to base its offer to stipulate to a downward role adjustment pursuant to U.S.S.G. § 3B1.2 on these principles, and within these parameters.

Because the criminal offense appears to be Atkinson's first arrest for drug distribution, and in light of Atkinson having had to leave with the confidential source's money to return with the drugs that he sold, the Court finds that Atkinson has presented sufficient evidence to prove by a preponderance of the evidence that his role in the criminal activity was somewhere in between a minor and minimal participant. In Atkinson's July 12, 2012, statement that he provided to the USPO through counsel accepting responsibility for the offense, Atkinson stated:

> I [] left [my] residence to obtain the methamphetamine, and when I returned I gave it to the [government source] who paid $250 for the methamphetamine. The officer [who arrested me later] searched my house and consistent with my 'role' in selling drugs [did not find any]. I was <u>not</u> a supplier of drugs. I went to a supplier's house, secured drugs for sale, and then sold them to a confidential informant. . . . I did it to gain a very small amount of money.

PSR ¶ 13, at 5-6. Atkinson's statement is not the sole evidence of his mitigating role in the criminal

activity for which he was arrested.  Both parties liken Atkinson's participation in the criminal activity to that of a courier.  See  USA Sentencing Memorandum at 3 ("[W]hen the defendant was approached by the CS, the defendant served as a courier, ferrying the money to his source of supply and returning to the residence with only the amount of methamphetamine the CS sought to purchase."); Atkinson Sentencing Memorandum at 1 ("[T]he CS arranged for a controlled buy of $250.00 worth of methamphetamine, using Mr. Atkinson as a courier.").  Although the United States and Atkinson analogize his status as a street-level dealer -- as opposed to a wholesale supplier -- to that of an average courier, in light of the well-settled law that courier status does not automatically entitle a defendant to a 2-level downward adjustment under U.S.S.G. § 3B1.2 as a minor participant, the analogy does not provide strong support -- standing alone -- for adjusting Atkinson's offense level downward 3 levels.  The assertion that, because Atkinson was a go-between and was not high up enough in the drug-trafficking scheme for the supplier to entrust Atkinson with drugs in his home, Atkinson was somewhere between a minor and minimal participant in the criminal activity is -- alone -- equally unconvincing.  The United States asserts that the criminal activity in which Atkinson was a participant was a drug-trafficking scheme that was operated by one or more mobile suppliers supplying drugs to a substantial number of the street-level dealers.  The United States and Atkinson are contending that Atkinson was not entrusted with his own even small supply of drugs, because he was at such a low level.  This contention, it seems, if the United States was using principled decision-making in offering defendants stipulations pursuant to U.S.S.G. § 3B1.2, would weigh in favor of finding a minimal-participant role adjustment. Where the criminal activity for which Atkinson was convicted was a drug-trafficking scheme consisting of one or more suppliers supplying to street-level dealers, and where Atkinson was one of many street-level dealers, the Court can conceive of participants whose role made them more culpable than Atkinson -- such as the

supplier or those who supplied the drugs to the supplier. It is difficult, however, to conceive of a participant in this alleged drug trafficking scheme whose role made the participant less culpable than Atkinson. When given the chance at the hearing, the United States could not articulate a hypothetical minimal participant in this scheme. Atkinson, in response to the same inquiry, offered that a street-level dealer who was paid with drugs, rather than with money as he was, may be entitled to a 4-level reduction for having a minimal role in the criminal activity. While being paid in drugs rather than money for the same crime may distinguish two defendants, the Court is not convinced that the form of a defendant's payment the same crime it may be grounds on which to distinguish between defendants' respective culpability. On the other hand, the evidence of Atkinson's role as a go-between, only obtaining drugs when the government's confidential source provided him with money, supports finding that he likely had limited knowledge of the overall drug-trafficking scheme's extent. See United States v. Salazar-Samaniega, 361 F.3d at 1277(noting that the inquiry whether a defendant is a minor or minimal participant must "focus upon the defendant's knowledge or lack thereof concerning the scope and structure of the enterprise and of the activities of others involved in the offense")(quoting United States v. Calderon-Porras, 911 F.2d at 423-24). Moreover, this case is Atkinson's first distribution conviction, and there is no evidence that Atkinson has distributed drugs before this crim. This case is thus distinguishable from those cases in which courts have refused to grant a downward adjustment because the courier-level defendant had participated in multiple transactions. The execution of the search warrant confirmed what the confidential source experienced during the transaction, that Atkinson did not have drugs in his possession for sale, but could only act as a go-between when he was provided money. Atkinson's role in this criminal activity is also distinguishable from those cases in which the courier-level defendant was found with a substantial amount of drugs and/or money. These circumstances appear to provide support for

Atkinson's continued emphasis that, while he does not contend the confidential source entrapped him, he would not have distributed the drugs otherwise.   Under the circumstances, therefore, although the United States' offer of the 3-level downward role adjustment pursuant to U.S.S.G. § 3B1.2 may not properly reflect Atkinson's role in the offense, the Court finds that Atkinson has proved, by a preponderance of the evidence, that he is entitled to the benefit of his bargain in the Plea Agreement.  The Court, therefore, grants the requests in the parties' sentencing memoranda and will accept the stipulation in the Plea Agreement for a 3-level downward role adjustment under U.S.S.G. § 3B1.2 for Atkinson's role in the criminal activity.

**IT IS ORDERED** that the requests in: (i) The United States of America's Sentencing Memorandum, filed June 12, 2012 (Doc. 28)("USA Sentencing Memorandum"); and (ii) the Defendant's Sentencing Memorandum, filed June 14, 2012 (Doc. 29), are granted, and Defendant William Atkinson is sentenced to 18 months imprisonment.

_____
UNITED STATES DISTRICT COURT

*Counsel:*

Kenneth J.  Gonzales
   United States Attorney
Terri J. Abernathy
   Assistant United States Attorney
Las Cruces, New Mexico

       *Attorneys for the Plaintiff*

Steven Lorenzo Almanza
The Law Office of Steven L. Almanza
Las Cruces, New Mexico

       *Attorney for the Defendant*

-24-